TOWN OF FAIR HAVEN AND VILLAGE OF FAIR HAVEN

*v.*

CHARLES E. STANNARD

Special Term at Rutland, November, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed January 2, 1940.

*Fenton, Wing & Morse* and *Asa S. Bloomer* for the defendant.

*Philip M. M. Phelps* for the Town of Fair Haven, plaintiff.

*Leo E. Pratt* for the Village of Fair Haven, plaintiff.

MOULTON, C. J.   This is a proceeding to enjoin the defendant from maintaining a nuisance on the premises occupied by him in the village and town of Fair Haven.   The original parties plaintiff were the town of Fair Haven, the village of Fair Haven and the local board of health of the town, but, before hearing below, the last named party withdrew. The chancellor found that the manner in which the defendant conducted his business of dealing in and curing hides and pelts, skinning skunks and dealing in meat scraps and the carcasses of animals constituted a nuisance, and issued an injunction against its continuance. An appeal was taken, and a bill of exceptions allowed and filed.

The bill of complaint was signed by all three of the village trustees, and by two of the three selectmen of the town, and the only question presented by the brief of the parties is whether the signers had authority to institute and carry through the proceedings.   This issue, it may be noted, was not raised by the pleadings, but it sufficiently appears from the record before us that it was brought into the case by the conduct of counsel on both sides, and since it is made the subject of certain findings by the chancellor, we give it attention. *Valiquette* v. *Smith,* 108 Vt. 121, 127, 183 Atl. 483, and cas. cit.

The findings upon which the defense is based are these : A special town meeting was held on July 26, 1938, pursuant to a warning, the fourth article of which was "to transact any other business proper to be done at a special town meeting," at which meeting, and under the above article of the warning, it was unanimously resolved "That the town give its full approval to the local Board of Health and to the town officials to take such legal steps as may be necessary to permanently restrain Charles E. Stannard from maintaining on Main Street a nuisance such as now exists, and which is both obnoxious to the senses and detrimental to the health of the citizens of Fair Haven," and the adoption of this resolution was the only authority given by the voters of the town for the bringing and maintaining of this proceeding.   The village of Fair Haven held no meeting, and did

not vote to authorize the trustees to act in the matter. No formal vote was taken either by the board of selectmen or the board of trustees, and the only official act by either body was the signing of the bill of complaint by two of the selectmen and all three of the trustees.

The defendant argues that the fourth article in the warning of the special town meeting did not specifically indicate the business to be transacted, as required by P. L. 3425, and therefore the resolution was not legally passed, and could furnish no authority to the selectmen. But we need spend no time with this contention, nor with the fact that the village held no meeting and did not vote upon the subject. Municipal officers derive their authority largely, if not wholly, from the law and not from the municipality. *New Haven* v. *Weston*, 87 Vt. 7, 13, 14, 86 Atl. 996, 46 L. R. A. (N. S.) 921. And in this instance the authority is expressly given by P. L. 3668, which provides that "The selectmen of a town in the name and behalf of such town * * * and the trustees of an incorporated village, in the name and behalf of such village, may prefer a bill in equity for relief by injunction for the abatement of public nuisances, * * *" The vote or failure to vote, on the part of the town or village has no effect upon the validity of this proceeding.

It is further objected that this suit cannot be maintained because neither the board of selectmen nor the board of trustees held a meeting to consider the situation and took a formal vote to institute the proceedings. The selectmen have general supervision of the affairs of the town. P. L. 3483; *Town of Bennington* v. *Booth*, 101 Vt. 24, 29, 140 Atl. 157, 57 A. L. R. 156. The trustees have the same powers and perform the same duties in relation to the village as the selectmen have and perform with relation to the town. P. L. 41, 3590. Although both boards are included in the statutory definition of legislative bodies (P. L. 3664, 3723) they perform many administrative duties, being invested by various statutes with jurisdiction over numerous matters, of which the subject of this suit is one, which concern the safety, convenience and health of the inhabitants of their respective municipalities. Nowhere, by express statutory requirement or by reasonable implication, is a meeting and a formal vote made an indispensable preliminary to the exercise of a power of this sort. Our decisions recognize no such doc-

trine, but, on the contrary, regard cognizance of, and consent to, the proposed course of action as being all that is necessary. *Dunbar* v. *Godbout*, 105 Vt. 448, 451, 168 Atl. 551; *Guyette* v. *Town of Bolton*, 46 Vt. 228; *Hunkins* v. *Town of Johnson*, 45 Vt. 131, 136, 137. In this the concurrence of the majority is sufficient. P. L. 16; and see cases last above cited, and *Goslant* v. *Town of Calais*, 90 Vt. 114, 123, 96 Atl. 751; *Daniels* v. *Hathaway*, 65 Vt. 247, 250, 26 Atl. 970, 21 L. R. A. 377; *Gregg* v. *Town of Weathersfield*, 55 Vt. 385, 387.

We will assume, in support of the decree, that the chancellor inferred such facts from those certified up as he ought to have done or as he fairly might have done. *Labor* v. *Carpenter* 102 Vt. 418, 422, 148 Atl. 867. It strains no inference to say that the requisite concurrence appears from the fact that the bill of complaint was signed by all the trustees and a majority of the selectmen.

*Decree. affirmed.*